**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TIM JONES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>REGAL CINEMAS INC.,<br><br>Defendant. | Case No.: 1:23-cv-11145<br><br>Hon. Margaret M. Garnett, U.S.D.J. |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**<u>DEFENDANT REGAL CINEMAS, INC.'S MOTION TO DISMISS</u>**

**BRYAN CAVE LEIGHTON PAISNER LLP**
Jonathan B. Potts (admitted *pro hac vice*)
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102
T: 314-259-2403
E: Jonathan.Potts@bclplaw.com

-and-

**BRYAN CAVE LEIGHTON PAISNER LLP**
Laith J. Hamdan
1290 Avenue of the Americas
New York, NY 10104
T: 212-541-2328
E: Laith.Hamdan@bclplaw.com

*Attorneys for Defendant Regal Cinemas, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 1

I. Plaintiff Lacks Article III Standing to Bring His ACAL Claim for Monetary Relief. ..... 1

A. Plaintiff Fails to Plead That He Experienced Concrete Harm. ..... 1

B. Plaintiff May Not Shift Legal Theories in His Opposition Brief. ..... 5

C. Plaintiff's Cited Authorities Are Distinguishable. ..... 6

D. Plaintiff Does Not Plead a Concrete Informational Injury From a Momentary Delay in Learning the Amount of the Booking Fee. ..... 9

II. Plaintiff Does Not Oppose Dismissal of His Request for Injunctive Relief. ..... 10

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allco Fin. Ltd. v. Klee*,
861 F.3d 82 (2d Cir. 2017)....................8

*Baehr v. Creig Northrop Team, P.C.*,
953 F.3d 244 (4th Cir. 2020)....................8

*Bartell v. LTF Club Operations Co.*,
Case No. 2:14-cv-401, 2016 WL 11596096 (S.D. Ohio Aug. 8, 2016)....................2

*Carter v. HealthPort Techs., LLC*,
822 F.3d 47 (2d Cir. 2016)....................8

*Charles v. Color Factory, LLC*,
2024 WL 1693236 (S.D.N.Y. Apr. 19, 2024)....................6, 7

*Cottle v. Monitech, Inc.*,
No. 7:17-CV-137-BO, 2017 WL 6519024 (E.D.N.C. Dec. 20, 2017), *aff'd*, 733 Fed. Appx. 136 (4th Cir. 2018)....................2

*FEC v. Akins*,
524 U.S. 11 (1998)....................9

*First Nat'l Bank of Chicago v. Silver*,
73 A.D.3d 162 (2d Dep't 2010)....................5

*Grinblat v. Frontline Asset Strategies, LLC*,
No. 7:22-CV-4467 (NSR), 2023 WL 5002474 (S.D.N.Y. Aug. 4, 2023)....................3

*Harty v. West Point Realty, Inc.*,
38 F.4th 435 (2d Cir. 2022)....................10

*Jud. Watch, Inc. v. FEC*,
293 F. Supp. 2d 41 (D.D.C. 2003)....................9, 10

*Lindblom v. Santander Consumer USA Inc.*,
Case No. 1:15-cv-0990-BAM, 2018 WL 500347 (E.D. Cal. Jan. 22, 2018)....................8, 9

*Littlejohn v. Phoenix Title Loans LLC*,
No. CV-18-04250-PHX-SMB, 2020 WL 209936 (D. Ariz. Jan. 14, 2020)....................2

*Louis v. Bluegreen Vacations Unlimited, Inc.*,
Case No. 21-CV-61938-RUIZ/STRAUSS, 2022 WL 2340958 (S.D. Fla. May 13, 2022), *report and recommendation adopted*, 2022 WL 1793058 (S.D. Fla. June 1, 2022) ....................2

*Maddox v. Bank of New York Mellon Trust Co., N.A.*,
19 F.4th 58 (2d Cir. 2021) ....................4, 5

*Mira v. Argus Media*,
No. 15-cv-9990 (RJS), 2017 WL 1184302 (S.D.N.Y. Mar. 29, 2017) ....................5

*Spitz v. Caine & Weiner Co.*,
No. 23-CV-7853 (PKC) (CLP), 2024 WL 69089 (E.D.N.Y. Jan. 5, 2024) ....................3

*Spokeo v. Robins*,
578 U.S. 330 (2016) .................... *passim*

*Strubel v. Comenity Bank*,
842 F.3d 181 (2d Cir. 2016) ....................2, 5

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .................... *passim*

*Tyler v. Hennepin County, Minnesota*,
598 U.S. 631 (2023) ....................8

*US Airways, Inc. v. Sabre Holdings Corp.*,
105 F. Supp. 3d 265 (S.D.N.Y. 2015) ....................8

*Warth v. Seldin*,
422 U.S. 490 (1975) ....................3, 6

**Statutes**

ACAL § 25.07(4) ....................4, 5, 7

ACAL § 25.29 ....................5

## PRELIMINARY STATEMENT

An Article III injury must be concrete, and it must be personal. Tellingly, Plaintiff's opposition brief (ECF # 20, "Opposition Brief") cites his Complaint only four times.[1] In lieu of resting on his own allegations and narrowly pleaded legal theory, Plaintiff furnishes a high-level policy discussion about how recent amendments to the ACAL could benefit consumers generally, focusing largely on secondhand ticket resellers' charges for live events. (Opp. Br. at 3, 11.) Plaintiff does not allege that he experienced any of these live-event-related issues with Regal, a cinema chain. Plaintiff also implies for the first time that Regal's Booking Fee is not a permitted type of fee under the ACAL. Plaintiff, however, judicially admitted that the Booking Fee he paid ***was*** the type of "ancillary fee" contemplated by the ACAL.

Plaintiff fails to plead how he personally experienced an Article III injury. Regal disclosed the existence of its Booking Fee at the outset of the ticketing process. Only a few seconds elapsed before Plaintiff learned the amount ($1.80), and the disclosure occurred before he decided to purchase his ticket. Plaintiff does not allege that the timing of Regal's disclosure influenced his behavior in any way. Far from "identical," Judge Rakoff's recent decision in *Charles v. Color Factory, LLC*, found standing because the defendant allegedly violated a different provision of the ACAL by failing to disclose the ***existence*** of fees at the outset and then failing to disclose the amount or type of fees ***at all***. Because Plaintiff lacks Article III standing to pursue his claims in federal court, this action must be dismissed for lack of jurisdiction.

## ARGUMENT

### I. Plaintiff Lacks Article III Standing to Bring His ACAL Claim for Monetary Relief.

#### A. Plaintiff Fails to Plead That He Experienced Concrete Harm.

[1] Capitalized terms and abbreviations used, but not defined, in this reply brief have the meanings attributed to those terms in Regal's moving brief (ECF # 15, "Moving Brief").

The Supreme Court recently "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) (quoting *Spokeo v. Robins*, 578 U.S. 330, 341 (2016)). Put another way, a plaintiff must personally suffer some separate harm "because of" the statutory violation. *Id.* at 426-27. Plaintiff fails to address this case law in his Opposition Brief.

Plaintiff argues that, by using the word "shall," the ACAL's statutory notice scheme is mandatory. (Opp. Br. at 7-8.) Mandatory or not, "courts across the country have held that a violation of a statutory notice scheme, standing alone, is not a sufficient 'injury in fact' to confer Article III standing." *Bartell v. LTF Club Operations Co.*, Case No. 2:14-cv-401, 2016 WL 11596096, at *4 (S.D. Ohio Aug. 8, 2016). Article III requires a plaintiff to "assert that the allegedly flawed notice ***caused her [] behavior to be different*** from what it would have been" if she received the properly timed notice. *Strubel v. Comenity Bank*, 842 F.3d 181, 193 (2d Cir. 2016) (emphasis added); *see also Louis v. Bluegreen Vacations Unlimited, Inc.*, Case No. 21-CV-61938-RUIZ/STRAUSS, 2022 WL 2340958, at *5 (S.D. Fla. May 13, 2022) (no standing absent allegation that "unmade disclosures would have had any bearing on [plaintiffs'] decision to accept the contract"), *report and recommendation adopted*, 2022 WL 1793058, at *1 (S.D. Fla. June 1, 2022); *Littlejohn v. Phoenix Title Loans LLC*, No. CV-18-04250-PHX-SMB, 2020 WL 209936, at *4 (D. Ariz. Jan. 14, 2020) ("Without any allegations going to how Defendant's disclosure violations impacted her 'informed use of credit,' the Complaint fails to allege a concrete injury" under Truth in Lending Act ("TILA")); *Cottle v. Monitech, Inc.*, No. 7:17-CV-137-BO, 2017 WL 6519024, at *3 (E.D.N.C. Dec. 20, 2017), *aff'd*, 733 Fed. Appx. 136 (4th Cir. 2018) (same).

"The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing" each element of standing. *Spokeo*, 578 U.S. at 338. "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly … allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)) (ellipsis in original). Yet, instead of identifying his ***own*** alleged harm, Plaintiff engages in an abstract policy discussion about the possible impact of Regal's website on hypothetical consumers. (*See, e.g.*, Opp. Br. at 3 (criticizing "extra 'clicking and scrolling' by a consumer").) Plaintiff cites a letter filed by a state senator in a different case and a senate investigative report, which generally encourage the possibility of consumers "'shopping around' among similar resellers." (*Id.* at 3-4, 11.) To the extent that Regal's website required consumers to engage in what Plaintiff characterizes as a "long-drawn-out process" of clicking through two screens to select an open seat and reach Regal's payment page to compare prices, such inconvenience or delay is not a harm traditionally recognized as providing a basis for a federal lawsuit, even if the state legislature sees fit to create such a right. *Spitz v. Caine & Weiner Co.*, No. 23-CV-7853 (PKC) (CLP), 2024 WL 69089, at *3 (E.D.N.Y. Jan. 5, 2024) ("[A]llegations of wasted time … alone are insufficient to establish standing unless they are inextricably linked to a separate concrete, tangible injury.") (internal quotation marks and alterations omitted); *Grinblat v. Frontline Asset Strategies, LLC*, No. 7:22-CV-4467 (NSR), 2023 WL 5002474, at *3 (S.D.N.Y. Aug. 4, 2023) ("[T]he expenditure of time alone is insufficient to establish standing unless it is inextricably linked to a concrete, tangible injury."). Plaintiff does not attempt to challenge these cases, cited in the Moving Brief.

Further, for any consumer, a desire to "shop around" necessarily depends on context, such as personal availability, proximity of the cinema location, seating availability, venue preferences, coordinating with others, etc. Plaintiff suggests, but does not plead, the abstract possibility of

comparing movie ticket prices with AMC or Fandango (Opp. Br. at 3, 11), but Plaintiff does not allege that ***he*** intended to "shop around" for different tickets on those websites. Nor does he allege that spending a few additional seconds on Regal's website prevented ***him*** from navigating to other websites or opening a new browser window to compare prices. In short, even if the inability to "shop around" were an Article III injury, which it is not, Plaintiff still fails to "allege[] that this purported risk materialized" for him personally. *Maddox v. Bank of New York Mellon Trust Co., N.A.*, 19 F.4th 58, 65 (2d Cir. 2021). Plaintiff's reliance on non-party hypotheticals fails to established a "particularized" injury to Plaintiff. *See Spokeo*, 578 U.S. at 338 (particularized injury "must affect the plaintiff in a personal and individual way.'") (internal quotations omitted).

Ultimately, Plaintiff's Opposition Brief rests on his allegation that he "was forced to pay Defendant's booking fee." *See* Opp. at 2, 6 (citing Compl., ¶ 31). Payment of a fee, however, is not an Article III injury. Plaintiff's contention that he "was harmed by paying this booking fee, even though that booking fee was not disclosed to Plaintiff at the beginning of the purchase process, and therefore is unlawful," wrongly equates the statutory violation with Article III harm when the two concepts are distinct. *TransUnion*, 594 U.S. at 426-27. Regardless of which screen first displayed the amount of the Booking Fee, Plaintiff admits that the Booking Fee "is an 'ancillary fee[] that must be paid in order to purchase the ticket" online. (*See* Compl. ¶ 30) (quoting ACAL § 25.07(4)). At the outset of the ticketing process, Regal disclosed the existence of the Booking Fee alongside the ticket price, expressly stating that it "Exclud[ed] Booking Fees." (Compl., ¶ 11, fig. 3.) Plaintiff clicked through one intermediate screen (to select his seat) before Regal disclosed the specific amount of the Booking Fee and Plaintiff chose to complete the transaction. (*Id.*, ¶¶ 12-13 & figs. 4, 5.) Plaintiff fails to allege that, had Regal disclosed the amount of the Booking Fee ($1.80) a few moments earlier, he would not have bought a ticket. *See*

*Strubel*, 842 F.3d at 193 (requiring Plaintiff to plead a change in consumer behavior to satisfy Article III). As a result, Plaintiff's "perfunctory allegation" of harm fails to plead that the timing of the disclosure concretely and personally harmed Plaintiff. *Maddox*, 19 F.4th at 65.

**B. Plaintiff May Not Shift Legal Theories in His Opposition Brief.**

Plaintiff suggests for the first time in his Opposition Brief that Regal's Booking Fee might not be for a "permitted purpose." (Opp. at 8-10.) On the contrary, the Complaint acknowledges that ACAL § 25.07(4) ***permits*** "ancillary fee[s] that must be paid in order to purchase the ticket" and Plaintiff judicially admits that the Booking Fee ***was*** such a fee. (Compl. ¶ 30.). Instead of ***prohibiting*** these ancillary fees, ACAL § 25.07(4) creates disclosure requirements for them, which are the sole basis of Plaintiff's Complaint. While Plaintiff remarks that only "reasonable" charges for "special services" are permitted under ACAL § 25.29 (Opp. Br. at 8-10), the Complaint ***does not allege*** that the amount of Regal's Booking Fee was unreasonable, or that the Booking Fee was not related to "special services" within the meaning of the statute. In fact, the Complaint never cites ACAL § 25.29 or uses the words "unreasonable" or "special services." Having declined to amend his Complaint in response to Regal's motion, Plaintiff cannot rely on theories not alleged. *See Maddox*, 19 F.4th at 65 (rejecting reliance on new allegations); *Mira v. Argus Media*, No. 15-cv-9990 (RJS), 2017 WL 1184302, at *3 (S.D.N.Y. Mar. 29, 2017) (same).

Reverting back to the disclosure issue, Plaintiff strings together a variety of unrelated New York laws that contain statutory notice requirements to suggest the existence of a purported principle concerning "conditions precedent" for the collection of fees in commercial transactions. (Opp. Br. at 7-8.) Plaintiff's cited case and statutes relate to state civil procedural requirements for *initiating new legal actions* by requiring plaintiffs to serve notices of potential legal claims in addition to regular service of process. *See First Nat'l Bank of Chicago v. Silver*, 73 A.D.3d 162, 165-66 (2d Dep't 2010) (describing notices that must be served alongside summonses and

petitions). These examples of notice obligations imposed on plaintiffs (not defendants) to perfect civil lawsuits have nothing to do with disclosure requirements in commercial transactions, including the payment of fees under the ACAL. Unsurprisingly, Plaintiff fails to cite any federal case tying these state rules of civil procedure to Article III standing.

Despite raising all these issues, Plaintiff asserts that discerning his legal theory "is not a proper inquiry" because "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." Opp. Br. at 7 (quoting *Charles v. Color Factory, LLC*, 2024 WL 1693236, at *3 (S.D.N.Y. Apr. 19, 2024); *Warth v. Seldin*, 422 U.S. 490, 500 (1975)).) Plaintiff's argument misses the point. Regal's Rule 12(b)(1) motion challenges whether Plaintiff pleaded a concrete and particularized injury "because of" the identified violation in the Complaint. *TransUnion*, 5994 U.S. at 426-27. Because Plaintiff's Opposition Brief confirms that he did not, Plaintiff lacks Article III standing to bring this claim in federal court.

**C. Plaintiff's Cited Authorities Are Distinguishable.**

Plaintiff relies heavily on the recent decision in *Color Factory*, in which the court found standing was alleged where the defendant ***never*** disclosed the type and amount of the disputed fee. Instead, after disclosing the face value of a ticket "without disclosing any ancillary fees," the defendant charged the plaintiff an additional $8.99 per ticket for "Taxes & Fees." *See Color Factory*, 2024 WL 1693236, at *1. The plaintiff alleged that, "masked under the ambiguous category 'taxes & fees,'" the defendant "does not delineate how much of the additional $8.99 is allocated to taxes versus fees," "[t]hat information is never made available to the consumer, even after she completes the checkout process and purchases a ticket," so the plaintiff "ha[d] no way of knowing" how much she paid in fees because the defendant "never gave her a breakdown." (Compl., Case No. 1:24-cv-00322, ECF # 1, ¶¶ 1, 16, 34, 36, attached hereto as Exhibit A.) The court held the defendant's ***non-disclosure*** may have violated a ***different*** "statutory requirement

that defendant 'disclose in a clear and conspicuous manner the portion of the ticket price … that represents a service charge, or any other fee or surcharge to the purchaser.'" 2024 WL 1693236, at *4 (citing ACAL § 25.07(4) and the plaintiff's complaint).[2] Recognizing that the "complaint adequately allege[d] a lack of ***full*** disclosure," the court held that the plaintiff's payment of unexplained "fees" whose amount(s) were not disclosed ***at all*** was sufficient to establish an injury under Article III. *Id.* at *3-4 (emphasis added); *see also* Moving Br. at 7 (distinguishing overpayment injuries "premised on deceit" because "the terms of the deal are [not] fully disclosed"). Unlike *Color Factory*, Regal allegedly disclosed the Booking Fee (just not the amount) at the beginning of the transaction. (Compl. ¶11.) Regal also disclosed the full amount (and type) of the Booking Fee before Plaintiff purchased his ticket. (*See id.* ¶ 13; Opp. Br. at 1.) This distinction is critical for purposes of Article III: Plaintiff had full notice of the amount and type of fee before payment, the plaintiff in *Color Factory* did not. *Cf. TransUnion*, 594 U.S. at 431-42 (reversing trial verdict because, despite similar actions by defendant, Article III requires courts to discern whether each class member could establish harm on a personal basis).

Plaintiff also takes out of context *Color Factory*'s statement that "the allegation that plaintiff paid an unlawful fee is a sufficiently concrete economic injury to confer standing." (*See* Opp. Br. at 1, 5 (citing *Color Factory*, 2024 WL 1693236, at *3).) Specifically, Plaintiff misinterprets the word "unlawful" in this passage to suggest that ***any*** violation of state law is sufficient to confer Article III standing due to the states' "police power." The entire point of recent *TransUnion* and *Spokeo* is that statutory "unlawfulness" and Article III injury are not coextensive. *See Spokeo*, 578 U.S. at 341; *TransUnion*, 594 U.S. at 426-27. This is especially true for

[2] This "clear and conspicuous" issue is what the court stated "was not a proper inquiry for the Court to undertake at this stage of the proceedings," as quoted in Plaintiff's Opposition Brief (at 7). The court was not, as Plaintiff suggests, indicating that it is never appropriate to consider the legal underpinning of a claimed injury.

"procedural" violations like the one alleged by Plaintiff. *See TransUnion*, 594 U.S. at 440 ("Without any evidence of harm caused by the format of the mailings, these are 'bare procedural violation[s], divorced from any concrete harm.'") (quoting *Spokeo*, 578 U.S. at 341). In short, *Color Factory* did not announce the overly broad rule Plaintiff desires, which would deviate from Second Circuit and Supreme Court precedent. *See also Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 258 (4th Cir. 2020) (rejecting "unlawful-transaction theory of standing"). Instead, *Color Factory* cited three uncontroversial standing cases in which plaintiffs alleged they lost money or paid "too much" money as a result of unlawful conduct that did not involve disclosure rules. In *Tyler v. Hennepin County, Minnesota*, 598 U.S. 631 (2023), the defendant county foreclosed on the plaintiff's real property to satisfy a $15,000 tax lien, sold the real property for $40,000, and refused to relinquish that difference to the plaintiff. *Id.* at 635. In *Allco Fin. Ltd. v. Klee*, 861 F.3d 82 (2d Cir. 2017), the plaintiff alleged that, under the Federal Power Act, Connecticut energy regulators impermissibly charged fees in connection with competitive bidding, which constituted improper state regulation of the interstate wholesale energy market. *See id.* at 91-92, 101. In *Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016), the defendant "charged plaintiffs more than the statutory maximum fees allowed" by law in connection with obtaining copies of medical records. *Id.* at 51, 58. These cases have nothing to do with challenging the timing of a disclosure, let alone when full disclosure occurs before the plaintiff spent any money.

None of Plaintiff's other cited cases support his disclosure theory either. For example, *US Airways, Inc. v. Sabre Holdings Corp.*, 105 F. Supp. 3d 265 (S.D.N.Y. 2015), is not even an Article III case, much less a disclosure case. The plaintiff airline alleged "grossly inflated airline booking fees" based on a pricing conspiracy and sought actual damages for those "overcharges" and lost profits. *Id.* at 270. In *Lindblom v. Santander Consumer USA Inc.*, Case No. 1:15-cv-0990-BAM,

2018 WL 500347, at *13 (E.D. Cal. Jan. 22, 2018), there was a fee-sharing arrangement between the defendant financial services company and Western Union when plaintiffs made car loan payments online or telephonically, requiring payment of an additional fee. *Id.* at *1. The plaintiffs did not allege a failure or delay in notice about the type or amount of the additional fee – they were aware of the fee – but the fee-sharing arrangement was not described in the loan documents. *Id.* The plaintiffs complained that the shared fee was "impermissible altogether" because applicable law "forbid[s]" debt collectors from collecting ***any*** fee that is not "expressly authorized" by the applicable debt instrument or state law. *Id.* at *5. In sharp contrast to *US Airways* and *Lindblom*, there is no allegation here of "grossly inflated" fees, or fees that are "impermissible altogether."

### D. Plaintiff Does Not Plead a Concrete Informational Injury From a Momentary Delay in Learning the Amount of the Booking Fee.

Plaintiff next argues that he suffered an "informational injury" when Regal's website disclosed the amount of its Booking Fee a few seconds after disclosing the existence of the Booking Fee. (Opp. Br. at 10.) It is questionable that *TransUnion* recognizes informational injuries beyond the non-disclosure of information "subject to public-disclosure or sunshine laws that entitle all members of the public to certain information." 594 U.S. at 441. Acknowledging that informational injuries typically arise in "political contexts" (Opp. Br. at 12), Plaintiff cites no case in which a delayed pricing disclosure was deemed an informational injury. Instead, Plaintiff relies on the public disclosure cases distinguished by the Supreme Court where there was no allegation of a ***total*** failure to provide the required information. *See, e.g.*, *FEC v. Akins*, 524 U.S. 11, 21 (1998) (cited in *TransUnion*). Courts have also recognized that a ***delay*** in providing public information is materially different from a ***failure*** to provide that information. For example, in *Jud. Watch, Inc. v. FEC*, 293 F. Supp. 2d 41, 46 (D.D.C. 2003) (cited in Opp. Br. at 12), the court held

that a "delay" in providing required information – *i.e.*, after the "120-day statutory period" – was not "in and of itself, an injury in fact."

Even if an informational injury were alleged, Plaintiff acknowledges (Opp. Br. at 10-13) that "downstream consequences from failing to receive the required information" must also be alleged. *Harty v. West Point Realty, Inc.*, 38 F.4th 435, 444 (2d Cir. 2022) (quoting *TransUnion*, 594 U.S. at 442). Plaintiff does not identify any allegations in the Complaint regarding "downstream consequences" of a momentary delay in learning the amount of the Booking Fee. (*See* Compl. ¶ 31.) The *Tavor* and *Kola* cases cited in the Moving Brief demonstrate that allegedly inadequate disclosures, without more, cannot establish an informational injury. (*See* Moving Br. at 9-10.) Plaintiff attempts to distinguish those cases, noting that the plaintiffs in those cases did not pay a fee. (Opp. Br. at 12-13.) However, for the reasons already outlined above, Plaintiff's payment of an ancillary fee was not a concrete harm ***caused by*** the timing of Regal's disclosure.

For all these reasons, Plaintiff lacks Article III standing to bring suit for monetary relief in federal court.

## II. <u>Plaintiff Does Not Oppose Dismissal of His Request for Injunctive Relief.</u>

After reviewing Regal's argument that Plaintiff lacks Article III standing to pursue injunctive relief, Plaintiff does not oppose Regal's request for dismissal. (Opp. Br. at 3, n.1.) Therefore, Plaintiff's claim for injunctive relief should be dismissed for the reasons set forth in Regal's Moving Brief.

## <u>CONCLUSION</u>

For all of the reasons state above, and in Regal's Moving Brief, Plaintiff lacks Article III standing to pursue this action in federal court. Accordingly, Regal respectfully submits that the Court should enter an Order, pursuant to Fed. R. Civ. P. 12(b)(1), dismissing this action for lack of subject matter jurisdiction.

Dated: May 28, 2024
St. Louis, MO

**BRYAN CAVE LEIGHTON PAISNER LLP**

By: *<u>/s/ Jonathan B. Potts</u>*
Jonathan B. Potts (admitted *pro hac vice*)
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102
T: 314-259-2403
E: Jonathan.Potts@bclplaw.com

-and-

Laith J. Hamdan
1290 Avenue of the Americas
New York, NY 10104
T: 212-541-2328
E: Laith.Hamdan@bclplaw.com

*Attorneys for Defendant Regal Cinemas, Inc.*