## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIM JONES, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br>  v.<br><br>REGAL CINEMAS, INC.,<br><br>                   Defendant. | Civil Action No.: 1:23-cv-11145-MMG<br><br>Hon. Margaret M. Garnett |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Dated:  February 19, 2025

**BURSOR & FISHER, P.A.**
Philip L. Fraietta
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

Stefan Bogdanovich (*Pro Hac Vice*)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: sbogdanovich@bursor.com

*Class Counsel*

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................. 2

    A.    New York Arts & Cultural Affairs Law § 25.07(4)................................. 2

    B.    Plaintiff's Allegations ........................................................................... 2

    C.    The Litigation And Settlement Negotiations ......................................... 3

TERMS OF THE SETTLEMENT............................................................................ 4

    A.    Class Definition ..................................................................................... 4

    B.    Monetary Relief ..................................................................................... 4

    C.    Prospective Relief .................................................................................. 5

    D.    Release ................................................................................................... 5

    E.    Notice And Administration Expenses ..................................................... 5

    F.    Service Award And Attorneys' Fees, Costs, And Expenses ................... 6

ARGUMENT ........................................................................................................ 6

I.    FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE................................ 6

    A.    The *Grinnell* Factors ............................................................................ 8

        1.    Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1)..................................................................8

        2.    The Reaction Of The Class (*Grinnell* Factor 2).........................10

        3.    Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3)............................10

        4.    Plaintiff Would Face Real Risks If The Case Proceeded (*Grinnell* Factors 4, 5, And 6)..............................................................11

        5.    Defendant's Ability To Withstand A Greater Judgment (*Grinnell* Factor 7) ............................................................................12

        6.    The Settlement Amount Is Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 And 9)........................................................13

    B.    The Rule 23(e)(2) Factors .................................................................... 14

        1.    The Class Representative And Class Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A)...............................14

        2.    The Settlement Was Negotiated At Arm's Length ....................15

       3.     The Settlement Provides Adequate Relief To The Class ............................15

       4.     The Settlement Treats All Class Members Equally ...................................16

II.     THE NOTICE PLAN COMPORTS WITH DUE PROCESS .......................................... 17

III.    THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED........................... 19

CONCLUSION......................................................................................................................... 20

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ............................................................................... 18

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) .............................................. 6, 13, 17

*Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Family Trust*,
   925 F.3d 63 (2d Cir. 2019) .......................................................................7

*Gilliam v. Addicts Rehab. Ctr. Fund*,
   2008 WL 782596 (S.D.N.Y. Mar. 24, 2008).......................................... 14

*City of Detroit v. Grinnell*,
   495 F.2d 488 (2d. Cir. 1974) .............................................................Passim

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. June 9, 1998)................................................... 10

*Hayes v. Harmony Gold Min. Co.*,
   2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011)........................................... 16

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*,
   271 F. App'x 41 (2d Cir. 2008) ............................................................. 18

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) .......................................... 8, 11, 12

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007)...........................................7

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019) ..................................... 14, 15, 16

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)......................................... 18

*In re MetLife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................................. 10

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019)................................................ 14, 15, 17

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
   2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ............................................................ 8

*In re Vitamin C Antitrust Litig*,
   2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ...................................................... 10, 11

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000) ........................................................................ 17

*Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*,
   333 F.R.D. 314 (S.D.N.Y. 2019) .................................................................... 7

*Khait v. Whirlpool Corp.*,
   2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ....................................................... 16

*Massiah v. MetroPlus Health Plan, Inc.*,
   2012 WL 5874655 (E.D.N.Y. 2012) ................................................................ 10

*Meredith Corp. v. SESAC, LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015) ............................................................... 17

*Moses v. The New York Times Co.*,
   79 F.4th 235 (2d Cir. 2023) ..................................................................... 7, 17

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ...................................................................... 13

*Reyes v. Altamarea Grp.*,
   2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ....................................................... 16

*TBK Partners, Ltd. v. Western Union Corp.*,
   517 F. Supp. 380 (S.D.N.Y. 1981) ................................................................. 8

*Tiro v. Public House Invs., LLC*,
   2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013) ....................................................... 6

*Torres v. Gristede's Oper. Corp.*,
   2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ....................................................... 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d. Cir. Jan. 4, 2005) ............................................................ 7, 18

*Weigner v. City of N.Y.*,
   852 F.2d 646 (2d Cir. 1988) ...................................................................... 18

*Willix v. Healthfirst, Inc.*,
2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ...................................................................... 11, 16

**STATUTES**

New York Arts & Cultural Affairs Law § 25.07(4)................................................................Passim

New York Arts & Cultural Affairs Law § 25.33 ......................................................................... 2

New York General Business Law § 399-zzz .............................................................................. 17

**RULES**

Fed. R. Civ. P. 12(b)(1)................................................................................................................. 3

Fed. R. Civ. P. 23 ...............................................................................................................Passim

**OTHER AUTHORITIES**

Fed. Judicial Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain
Language Guide* 3 (2010).......................................................................................................... 18

## INTRODUCTION

On November 20, 2024, this Court preliminarily approved the class action settlement between Plaintiff Tim Jones ("Plaintiff") and Defendant Regal Cinemas, Inc. ("Defendant") and directed that notice be sent to the Settlement Class. *See* ECF No. 32. The settlement administrator has implemented the Court-approved notice plan and direct notice has reached over 85.9% of the certified Settlement Class.[1] *See* Declaration of Cameron R. Azari Regarding Implementation Of Notice And Claims Administration ("Epiq Decl.") ¶ 18. The reaction from the Settlement Class has been overwhelmingly positive. Specifically, of the 442,430 Settlement Class Members, **zero** objected and **zero** requested to be excluded.[2] *Id.* ¶ 40. The Settlement is an excellent result for the Class and the Court should grant final approval.

The strength of the Settlement speaks for itself. After extensive negotiations, the Parties reached a Settlement that creates a non-reversionary Settlement Fund of $2,500,00.00, which will be used to pay all approved claims by class members, notice and administration expenses, a Court-approved service award to Plaintiff, and attorneys' fees, costs, and expenses to Class Counsel. Settlement ¶¶ 1.40; 2.1(b). Notably, Defendant collected $2,380,551.54 in allegedly unlawful fees, thus meaning the Settlement Fund equates to the potential actual damages available to Settlement Class Members. And, just as important, the Settlement also provides meaningful prospective relief aimed at the challenged conduct, as Defendant acknowledges that they changed their purchase flow process for tickets on its website to display the Booking Fee that was the subject of this litigation in a manner that complies with ACAL § 25.07(4) and agrees

---

[1] Capitalized terms used in this memorandum are defined in the Class Action Settlement Agreement (the "Settlement"), attached to the Declaration of Philip L. Fraietta In Support of Plaintiff's Unopposed Motion for Final Approval ("Fraietta Decl.") as Exhibit 1.
[2] The deadline for Settlement Class Members to object or request exclusion was February 14, 2025. *See* ECF No. 32 ¶¶ 16, 21.

to maintain the purchase flows for tickets to New York theaters on Defendant's Website in a manner that clearly and conspicuously discloses the total cost of the tickets, inclusive of Booking Fees, prior to the ticket being selected for purchase, unless and until New York Arts and Cultural Affairs Law § 25.07(4) is amended, repealed, or otherwise invalidated.

Given the relief provided by the Settlement, the Court should not hesitate to grant final approval.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. New York Arts & Cultural Affairs Law § 25.07(4)

Effective August 29, 2022, New York enacted Arts & Cultural Affairs Law § 25.07(4), which provides that:

> Every operator or operator's agent of a place of entertainment … shall disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket, and disclose in a clear and conspicuous manner <u>the portion of the ticket price stated in dollars that represents a service charge</u>, or <u>any other fee</u> or surcharge to the purchase.  Such <u>disclosure</u> of the <u>total cost</u> and fees shall be displayed in the ticket listing <u>prior to</u> the ticket being <u>selected for purchase</u>. … The price of the ticket shall not increase during the purchase process.

*Id.* (emphasis added).

The ACAL provides a private right of action to "any person who has been injured by reason of violation of" its provisions.  ACAL § 25.33.

### B. Plaintiff's Allegations

Defendant owns and operates movie theaters across the country, including in New York.  *See* Complaint (ECF No. 1) ("Compl.") ¶ 8.  Plaintiff alleges that when consumers purchase movie tickets to a New York theater on Defendant's website, they are "quoted a fee-less price, only to be ambushed by a $1.80 'booking fee' at checkout after clicking through the various screens required to make a purchase."  *Id.* ¶ 1; *see also id.* ¶¶ 9-15 and Figures 1-7.  Plaintiff

alleges that this conduct violates ACAL § 25.07(4) because Defendant failed to "disclose the 'total cost of a ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket' after a ticket is selected" and because Defendant "increase[ed] the price of their tickets during the purchase process." *Id.* ¶¶ 28-29.  As alleged, Plaintiff purchased a ticket to a New York theater on Defendant's Website and was forced to pay Defendant's Booking Fee.  *Id.* ¶ 31.

### C.    The Litigation And Settlement Negotiations

Plaintiff filed this case on December 22, 2023.  ECF No. 1.  On February 16, 2024, Defendant responded to the Complaint with a pre-motion letter requesting permission to file a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1).  ECF No. 9.  Plaintiff opposed the letter on February 24, 2024.  ECF No. 10.  The Court conducted a pre-motion conference on March 13, 2024, at which it granted Defendant leave to file its motion to dismiss.

On April 12, 2024, Defendant filed its motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1).  ECF No. 18.  On May 13, 2024, Plaintiff opposed Defendant's motion to dismiss (ECF No. 20) and on May 28, 2024, Defendant filed its Reply in further support of the motion to dismiss (ECF No. 22).

From the outset of the case, the Parties engaged in settlement discussions and, to that end, agreed to participate in a private mediation with Judge Scheindlin.  Declaration of Philip L. Fraietta In Support of Plaintiffs Unopposed Motion for Final Approval of Settlement ("Fraietta Decl.") ¶ 7.  As a part of the mediation, the Parties exchanged informal discovery including on issues such as the size and scope of the putative class, specifically the amount of Booking Fees Defendant collected during the relevant time period.  *Id.* ¶ 8.  Given that information would have been, in large part, the same information produced in formal discovery related to issues of class certification and summary judgment, the Parties had sufficient information to assess the strengths and weaknesses of the claims and defenses.  *Id.* ¶ 9.  On September 30, 2024, the Parties

conducted a full-day mediation before Judge Scheindlin. *Id.* ¶ 10.  At the conclusion of the

mediation, the Parties reached an agreement on all materials terms of a class action settlement

and executed a terms sheet. *Id.*  In the weeks following, a Settlement Administrator was engaged

and the Parties, in consultation with the Settlement Administrator on matters of notice and claims

administration, negotiated the full-form Settlement. *Id.* ¶ 11 and Exhibit 1.  The Court

preliminarily approved the Settlement on November 20, 2024. *Id.* ¶ 16 (citing ECF No. 32).

## TERMS OF THE SETTLEMENT

The key terms of the Settlement are briefly summarized as follows:

### A.    Class Definition

The "Settlement Class" or "Settlement Class Members" is defined as:

> [A]ll individuals in the United States who purchased electronic
> tickets to any film screening in any of Defendant's cinemas located
> in New York state from Defendant's Website from July 31, 2023,
> to and through July 15, 2024, using the guest checkout process.

Settlement ¶¶ 1.38, 1.39.[3]

### B.    Monetary Relief

The Settlement consists of a non-reversionary cash fund in the amount of $2,500,000.00,

which will be used to pay all approved claims by class members, notice and administration

expenses, a Court-approved service award to Plaintiff, and attorneys' fees, costs, and expenses to

proposed Class Counsel to the extent awarded by the Court. *Id*. ¶¶ 1.34, 1.35, 1.36, 1.37.  Every

member of the Settlement Class who submits a timely and valid Claim Form will receive a *pro*

---

[3] Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action
and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies,
successors, predecessors, and any entity in which the Defendant or its parents have a controlling
interest and their current or former officers, directors, agents, attorneys, and employees; (3)
persons who submit a timely and valid request for exclusion from the class; and (4) the legal
representatives, successors or assigns of any such excluded persons.  Settlement ¶ 1.38.

*rata* cash payment from the Settlement Fund. *Id.* ¶¶ 1.40; 2.1(b). The *pro rata* payment for each Settlement Class Member will be equal to that Settlement Class Member's Out-of-Pocket Percentage multiplied by the Available Settlement Fund, following the deduction of notice and claims administration costs, attorneys' fees and expenses, and the class representative service award, all of which will be paid from the Settlement Fund. *Id.*

### C.    Prospective Relief

In connection with the Settlement, Defendant acknowledges that they changed their purchase flow process for tickets on its website to display the Booking Fee that was the subject of this litigation in a manner that complies with ACAL § 25.07(4) and agrees to maintain the purchase flows for tickets to New York theaters on Defendant's Website in a manner that clearly and conspicuously discloses the total cost of the tickets, inclusive of Booking Fees, prior to the ticket being selected for purchase, unless and until New York Arts and Cultural Affairs Law § 25.07(4) is amended, repealed, or otherwise invalidated. *Id.* ¶ 2.2.

### D.    Release

In exchange for the relief described above, Defendant and each of the "Released Parties" as defined at ¶ 1.32 of the Settlement will receive a full release of all claims arising out of any facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the alleged collection by Defendant of Booking Fees in connection with electronic ticket sales from July 31, 2023 to and through July 15, 2024. *See id.* ¶¶ 1.31, 1.32, 1.33, 3.1-3.2 for full release language.

### E.    Notice And Administration Expenses

The Settlement Fund will be used to pay the cost of sending the Notice set forth in the Agreement and any other notice as required by the Court, as well as all other costs of administration of the Settlement. *See id.* ¶¶ 1.36, 1.40.

### F.     Service Award And Attorneys' Fees, Costs, And Expenses

In recognition of his efforts on behalf of the Settlement Class, the Parties have agreed that Plaintiff may receive, subject to Court approval, a service award of up to $5,000 from the Settlement Fund, as appropriate compensation for his time and effort serving as Class Representative and as a party to the Action.  *Id.* ¶ 8.3.  Defendant has also agreed that the Settlement Fund may also be used to pay Class Counsel reasonable attorneys' fees and to reimburse costs and expenses in this Action, in an amount to be approved by the Court.  *Id.* ¶ 8.1. Class Counsel has agreed—with no consideration from Defendant—to limit its petition to the Court for attorneys' fees, unreimbursed costs, and expenses to one-third of the Settlement Fund ($833,333.33).  *Id.*  Defendant may challenge the amounts requested.  Should the Court award less than the amount sought by Class Counsel, the difference in the amount sought and the amount ultimately awarded shall remain in the Settlement Fund.  *See id.*  On January 29, 2025, Plaintiff and Class Counsel separately moved for these awards.  *See* ECF No. 33.  That motion is unopposed.

### <u>ARGUMENT</u>

## I.     FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

Final approval of the Settlement is appropriate here because it is procedurally and substantively fair, adequate, and reasonable.  *See* Fed. R. Civ. P. 23(e)(2).  To determine whether to approve a settlement, "[c]ourts examine procedural and substantive fairness in light of the 'strong judicial policy in favor of settlement' of class action suits."  *Tiro v. Public House Invs., LLC*, 2013 WL 4830949, at *5 (S.D.N.Y. Sept. 10, 2013).  "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005).  "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached

in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 at 116 (2d. Cir. Jan. 4, 2005).  Courts must also "expressly consider two core factors when reviewing the substantive fairness of a settlement: the adequacy of relief provided to a class and the equitable treatment of class members." *Moses v. The New York Times Co.*, 79 F.4th 235, 244 (2d Cir. 2023) (citing Fed. R. Civ. P. 23(e)(2)(C)-(D)).  When evaluating the relief provided, "courts must 'tak[e] into account,' among other considerations, 'the terms of any proposed award of attorney's fees,'" such that "'both the terms of the settlement and any fee award encompassed in a settlement agreement [is reviewed]' in tandem." *Id.* (citing Fed. R. Civ. P. 23(e)(2)(C)(iii)); *Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Family Trust*, 925 F.3d 63, 72 (2d Cir. 2019)).

Courts and public policy considerations favor settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.  "The compromise of complex litigation is encouraged by the courts and favored by public policy," and is particularly encouraged for the compromise of class actions.  *Id.* at 117.  "Absent fraud or collusion … [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Courts should also consider the "four enumerated factors in the new [Federal Rule of Civil Procedure] Rule 23(e)(2), in addition to the nine *Grinnell* factors."  *Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 420 (S.D.N.Y. 2019).  The Rule 23(e) factors are whether:  (A) the class representatives and class counsel have adequately represented the class;  (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the

effectiveness of any proposed method of distributing relief to the class, including the method of

processing class-member claims; (iii) the terms of any proposed award of attorney's fees,

including timing of payment; and (iv) any agreement required to be identified under Rule

23(e)(3); and (D) the proposal treats class members equitably relative to each other.  Fed. R. Civ.

P. 23(e)(2).  The Rule 23(e)(2) factors significantly overlap or implicate the *Grinnell* factors, and

the Rule 23(e)(2) factors do not displace the *Grinnell* factors.  *In re Payment Card Interchange*

*Fee and Merchant Discount Antitrust Litig.*, 2019 WL 6875472, at *14 (E.D.N.Y. Dec. 16, 2019)

("There is significant overlap between the Rule 23(e)(2) and *Grinnell* factors, which

complement, rather than displace each other.").

    A.    **The *Grinnell* Factors**

        1.    **Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1)**

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to

avoid significant expense and delay, and instead ensure recovery for the class.  "Most class

actions are inherently complex and settlement avoids the costs, delays and multitude of other

problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp.

2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir.

2001).  Courts consistently have held that, unless the proposed settlement is clearly inadequate,

its acceptance and approval are preferable to the continuation of lengthy and expensive litigation

with uncertain results.  *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389

(S.D.N.Y. 1981), *aff'd*, 675 F.2d 456 (2d Cir. 1982).

As noted, the Parties exchanged informal discovery prior to reaching the Settlement,

including on issues such as the size and scope of the putative class, specifically the amount of

Booking Fees Defendant collected during the relevant time period.  Had no settlement been

reached, the next steps in the litigation would have been for the Court to resolve the motion to dismiss, and if that were denied, contested motions for summary judgment and for class certification, which would be at a minimum costly and time-consuming for the Parties and the Court and create risk that a litigation class would not be certified and/or that the Settlement Class would recover nothing at all. If Plaintiff prevailed through all of that, the Parties would still have to litigate the case at trial and possible appeals.

More specifically, Plaintiff is aware that Defendant would continue to assert a number of defenses on the merits, including (i) Plaintiff's lack of standing; (ii) ACAL 25.07(4) does not apply to movie theaters; (iii) Plaintiff's claims are barred by the voluntary payment doctrine; and (iv) Defendant's fees are permitted under ACAL § 25.29, and therefore are not unlawful as Plaintiff alleged. Fraietta Decl. ¶ 20. Plaintiff and Class Counsel are also aware that Defendant would oppose class certification vigorously, and Defendant would take the position that Plaintiff is not entitled to bring his claims on a class wide basis. *Id.* Plaintiff and Class Counsel further understand that Defendant would prepare a competent defense at trial. *Id.* Looking beyond trial, Plaintiff is also keenly aware of the fact that Defendant could appeal the merits of any adverse decision. *Id.* Victory for the Defendant at any one of those steps would deprive putative class members of any relief. No matter what the outcome, absent settlement, this case would likely expend significant court resources. And given that ACAL § 25.07(4) was recently enacted, there is no binding authority on these issues. *Id.*

The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable and adequate to the Class. Consequently, this *Grinnell* factor plainly weighs in favor of final approval of the Settlement.

### 2.    The Reaction Of The Class (*Grinnell* Factor 2)

With the second *Grinnell* factor, the Court judges "the reaction of the class to the settlement." *In re Vitamin C Antitrust Litig*, 2012 WL 5289514, at *4 (quoting *City of Detroit v. Grinnell*, 495 F.2d 448 at 463 (2d Cir. 1974)). "It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (internal quotation marks omitted). This "significant" factor weighs heavily in favor of final approval.

Here, the reaction of the Class Members to the Settlement has been overwhelmingly positive. Class Notice has been provided to the Settlement Class Members in accordance with the requirements of Rule 23(c)(2)(B) and the Preliminary Approval Order (ECF No. 32 at 12-14), and direct notice reached approximately 85.9% of the Settlement Class. *See* Epiq Decl. ¶ 25. As of February 10, 2025, **zero** class members objected to the Settlement, and **zero** opted-out. *See* Epiq Decl. ¶ 40. This exceptional participation rate and lack of objections from the Settlement Class leaves no question that the class members view the Settlement favorably, which weighs heavily in favor of final approval and further supports the "presumption of fairness." *See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 at 1027 (9th Cir. June 9, 1998) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. 2012) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness."). Consequently, this *Grinnell* factor weighs in favor of final approval of the Settlement.

### 3.    Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3)

"The pertinent question is whether counsel had an adequate appreciation of the merits of

the case before negotiating." *Torres v. Gristede's Oper. Corp.*, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement … but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176. Prior to reaching the Settlement, the Parties exchanged informal discovery including on issues such as the size and scope of the putative class, specifically the amount of Booking Fees Defendant collected during the relevant time period. Fraietta Decl. ¶¶ 8-9; 12. The Parties also discussed and debated the key facts, legal issues, litigation risks, and potential settlement structures. *Id.* ¶ 8. This information was sufficient for the Parties to assess the strengths and weakness of the claims and defenses and their relative negotiating positions. Fraietta Decl. ¶ 9.

Further, Class Counsel's experience in class action matters, as well as the other efforts made by counsel on both sides, confirms that the Parties are sufficiently well apprised of the facts of this action, and the strengths and weaknesses of their respective cases, to make an intelligent analysis of the proposed settlement. This *Grinnell* factor thus also weighs in favor of final approval.

### 4. Plaintiff Would Face Real Risks If The Case Proceeded (*Grinnell* Factors 4, 5, And 6)

"The fourth, fifth, and sixth *Grinnell* factors all relate to continued litigation risks," *i.e.*, the risks of establishing liability, damages, and maintaining the class action through trial. *In re Vitamin C*, 2012 WL 5289514, at *5. "Litigation inherently involves risks." *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011). "One purpose of a settlement is to avoid the uncertainty of a trial on the merits." *Id.*

Although Plaintiff's case is strong, it is not without risk. Defendant has made it clear

that, if the litigation continues, it will renew its motion to dismiss for lack of standing, move for summary judgment on various issues, and vigorously contest the certification of a litigation class.  In weighing the risks of certifying a class and establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d. at 177.  In the context of this litigation, not only would Plaintiff and the Class face risks in overcoming Defendant's motion practice, as well as certifying a class, but also further litigation will only delay relief to the Settlement Class Members.  The Settlement alleviates these risks and provides a substantial benefit to the Class in a timely fashion.

The risk of maintaining the class status through trial is also present.  The Court has not yet certified the Settlement Class for litigation purposes and the Parties anticipate that such a determination would be reached only after discovery is completed and exhaustive class certification briefing is filed.  Defendant would likely argue that individual questions preclude class certification.  Defendant would also likely argue that a class action is not a superior method to resolve Plaintiff's claims, and that a class trial would not be manageable.

Should the Court certify the class, Defendant would likely challenge certification through a Rule 23(f) application and subsequently move to decertify, forcing additional rounds of briefing.  Risk, expense, and delay permeate such a process.  The proposed Settlement eliminates this risk, expense, and delay as well.  Consequently, these *Grinnell* factors weigh in favor of final approval of the Settlement.

### 5.    Defendant's Ability To Withstand A Greater Judgment (*Grinnell* Factor 7)

Defendant would be unable to withstand a much greater judgment in this case, as Defendant recently emerged from Chapter 11 bankruptcy.  Fraietta Decl. ¶ 8.  Thus, this factor

weighs in favor of final approval.

> **6.    The Settlement Amount Is Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 And 9)**

The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (internal quotation omitted). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought. As the Second Circuit stated in *Grinnell*, "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery." 495 F.2d at 455 n.2.

Here, the non-reversionary cash Settlement Fund represents more than 100% of the allegedly unlawful fees collected by Defendant, and each Settlement Class Member who submits a simple Claim Form will receive a *pro rata* cash payment as a percentage of Out-of-Pocket Booking Fees he or she paid to Defendant during the class period, following the deduction of notice and claims administration costs, attorneys' fees and expenses, and the class representative service award, all of which will be paid from the Settlement Fund. Settlement ¶¶ 1.40; 2.1(b). In addition, Defendant acknowledges that it has changed the purchase flow for tickets on its website to clearly and conspicuously disclose the total cost of the tickets, inclusive of Booking Fees, prior to the ticket being selected for purchase, in a manner that complies with ACAL § 25.07(4), and agrees to comply with New York Arts & Cultural Affairs Law § 25.07(4), unless or until

New York Arts & Cultural Affairs Law § 25.07(4) is amended, repealed, or otherwise invalidated. *Id.* ¶ 2.2. Weighing the benefits of the Settlement against the risks associated with proceeding in litigation and in collecting on any judgment, the Settlement is more than reasonable. Moreover, when a settlement assures payment of substantial amounts to class members, and does not "sacrific[e] 'speculative payment of a hypothetically larger amount years down the road,'" it is reasonable under this factor. *Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008). Thus, these *Grinnell* factors also weigh in favor of final approval.

**B.    The Rule 23(e)(2) Factors**

**1.    The Class Representative And Class Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A)**

"Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 30 (E.D.N.Y. 2019). Here, "plaintiff's interests are aligned with other class members' interests because [she] suffered the same injuries:" paying an allegedly unlawful fee to Defendant due to its alleged failure to properly disclose the fee. *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019). "Because of these injuries, plaintiff[] ha[s] an interest in vigorously pursuing the claims of the class." *Id.* Further, numerous other courts in this Circuit have previously found that Class Counsel adequately meet the obligations and responsibilities of Class Counsel. *See* Fraietta Decl. Ex. 2, Firm Resume of Bursor & Fisher, P.A. This factor thus favors final approval.

### 2. The Settlement Was Negotiated At Arm's Length

Class Counsel and counsel for Defendant are experienced in class action litigation and engaged in protracted settlement discussions with the benefit of all necessary information to make an informed and intelligent evaluation of the strengths and weaknesses of the case. Accordingly, this Rule 23(e)(2) factor has been met.

### 3. The Settlement Provides Adequate Relief To The Class

Whether relief is adequate takes into account "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Rule 23(e)(2)(C)(i-iv). As to "the costs, risks, and delay of trial and appeal," this factor "subsumes several *Grinnell* factors … including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial. *In re Payment Card Interchange*, 330 F.R.D. at 36. As noted above, the Settlement has met each of these *Grinnell* factors. *Supra* §§ I.A(1)-(6). As to "any agreement required to be identified by Rule 23(e)(3)" or "any agreement made in connection with the proposal," *In re GSE Bonds*, 414 F. Supp. 3d at 696, no such agreement exists in this case other than the Settlement. Fraietta Decl. ¶ 27.

As to "the effectiveness of any proposed method of distributing relief to the class," "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Payment Card Interchange*, 330 F.R.D. at 40. Here, under the terms of the Settlement, Settlement Class Members who submit a timely Claim Form will receive a *pro rata* portion of the Settlement Fund, as a percentage of the Out-of-

Pocket fees he or she paid to and received by Defendant during the class period, following the

deduction of notice and claims administration costs, attorneys' fees and expenses, and the class

representative service award, all of which will be paid by the Settlement Fund.  Settlement ¶¶

1.40; 2.1(b).  This plan was proposed by experienced and competent counsel with the assistance

of an experienced Settlement Administrator and ensures "the equitable and timely distribution of

a settlement fund without burdening the process in a way that will unduly waste the fund."  *In re

GSE Bonds*, 414 F. Supp. 3d at 695.

As to "the terms of any proposed award of attorney's fees," Class Counsel has applied for

attorneys' fees, costs, and expenses "not to exceed one-third" of the Settlement Fund, which

amounts to no more than $833,333.33.  Settlement ¶ 8.1; ECF No. 33.  Class Counsel's

application is unopposed and is a reasonable request, and courts in this Circuit routinely approve

fee requests in the amount of one-third of a common fund.  *See, e.g.*, *Hayes v. Harmony Gold

Min. Co.*, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding "attorneys' fees in the

amount of one third" of a $9 million settlement fund), *aff'd* 509 F. App'x 21, 23-24 (2d Cir.

2013) (affirming fee award, and noting "the prospect of a percentage fee award from a common

fund settlement, as here, aligns the interests of class counsel with those of the class"); *Khait v.

Whirlpool Corp.*, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9

million settlement fund); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *6-7 (E.D.N.Y. Feb. 18,

2011) (awarding 33% of $7.7 million settlement fund).  As courts in this Circuit have noted, fee

requests for up to one-third of common funds represent what "reasonable, paying client[s] …

typically pay … of their recoveries under private retainer agreements."  *Reyes v. Altamarea Grp.*,

2011 WL 4599822, at *8 (S.D.N.Y. Aug. 16, 2011).

### 4.    The Settlement Treats All Class Members Equally

This Rule 23(e)(2) factor discusses "whether the apportionment of relief among class

members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *In re Payment Card Interchange*, 330 F.R.D. at 47. Here, the Settlement distributes cash relief to each Settlement Class Member on a *pro rata* basis equal to the percentage of the total amount of Out-of-Pocket fees he or she paid to Defendant during the class period, which has been found by courts in this Circuit to be equitable. *See id.*; *see also, e.g.*, *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a *pro rata* distribution plan "appears to treat the class members equitably … and has the benefit of simplicity"). Thus, this Rule 23(e)(2) factor is weighs in favor of approval.[4]

\* \* \*

Because the Settlement is, on its face, "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant final approval.

## II.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS

Before final approval can be granted, due process and Rule 23 require that the notice

---

[4] Additionally, the Second Circuit has found that "the existence and extent of incentive payments is relevant to whether 'class members [are treated] equitably relative to each other.'" *Moses*, 79 F.4th at 245 (quoting Fed. R. Civ. P. 23(e)(2)(D)) ("[T]he equitable-treatment requirement protects the interests of class representatives who play an active role in the litigation … [while] [a]t the same time, the rule requires that courts reject incentive awards that are excessive compared to the service provided by the class representative …."). Here, the requested $5,000 service award comprises a mere 0.2% of the $2,500,000.00 Settlement Fund and will have a *de minimis* impact on class member recovery. Additionally, other courts in this Circuit have found that $5,000 service awards are appropriate in ACAL and unlawful fee cases. *See Norcoss v. Tishman Speyer Properties, L.P.*, Case No. 23-cv-11153-JPO, ECF No. 36 at ¶ 15 (S.D.N.Y. Aug. 16, 2024) (approving $5,000 service award in similar ACAL ticket fee case); *Russett v. The Northwestern Mutual Life Ins. Co.*, Case No. 19-cv-07414-KMK, ECF No. 51 at ¶ 15 (S.D.N.Y. Oct. 6, 2020) (approving $5,000 service awards in case alleging unlawful fees under New York General Business Law § 399-zzz); *Heigl v. Waste Management of New York, LLC*, Case No. 19-cv-05487-WFK-ST, ECF No. 35 at ¶ 15 (E.D.N.Y. May 20, 2021) (same).

provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). "Such notice to class members need only be reasonably calculated under the circumstances to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *12 (S.D.N.Y. Dec. 23, 2009). Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B). At its core, all that notice must do is "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (citation omitted).

"It is clear that for due process to be satisfied, not every class member need receive actual notice, as long as counsel 'acted reasonably in selecting means likely to inform persons affected.'" *In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*, 271 F. App'x 41, 44 (2d Cir. 2008) (quoting *Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988)). The Federal Judicial Center notes that a notice plan is reasonable if it reaches at least 70% of the class. *See* Fed. Judicial Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* 3 (2010). The notice plan here easily meets these standards, as it provided direct notice to approximately 85.9% of the Settlement Class. *See* Epiq Decl. ¶ 25.

At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it met the requirements of Rule 23 and due process. *See* ECF No. 32 ¶ 12. The Plan has now been fully carried out by professional settlement administrator Epiq. Pursuant to the Settlement,

18

Defendant provided Epiq with a list of 569,609 available names, email addresses, and Out-of-Pocket Fee amounts. *See* Epiq Decl. ¶ 22. After Epiq removed duplicates, the Class List contained 442,430 potential members. *See id.* Epiq sent the Court-approved notice via email to 384,599 class members with potentially valid email addresses. *See id.* ¶ 23. A total of 380,107 notices were delivered. *Id.* ¶ 25. Accordingly, the Court-approved notice successfully reached 85.9% of the Settlement Class directly as of February 10, 2025.[5] *Id.* These summary notices also directed Settlement Class Members to the Settlement Website, where they were able to submit claims online; access important court filings, including the Motion for Attorneys' Fees; and see deadlines and answers to frequently asked questions. *See id.* ¶ 35. Moreover, Epiq will send two reminder notices both 30 days and 7 days prior to the Claims Deadline to all Settlement Class Members who have yet to file a claim at that time. Agreement ¶ 4.1(c). Given the broad reach of the notice, and the detailed information provided, the requirements of due process and Rule 23 are easily met.

## III.     THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

At the preliminary approval stage, the Court certified the following Settlement Class for settlement purposes:

> [A]ll individuals in the United States who purchased electronic tickets to any film screening in any of Defendant's cinemas located in New York state from Defendant's Website from July 1, 2023 to and through July 15, 2024, using the guest checkout process.

ECF No. 32 ¶ 9. The Court's preliminary approval order also appointed Philip L. Fraietta and Stefan Bogdanovich of Bursor & Fisher, P.A. as Class Counsel and Plaintiff Tim Jones as Class Representative, both for settlement purposes. *Id.* ¶ 8.

---

[5] Defendant, through Epiq, also notified the appropriate state and federal officials pursuant to CAFA. *See* Epiq Decl. ¶ 19.

In doing so, the Court set forth an extensive analysis of the propriety of certification under Rules 23(a) and 23(b)(3), following the argument presented in the preliminary approval motion. *Id.* ¶ 10. This Court was correct in certifying the Class for settlement purposes pursuant to Rules 23(a) and 23(b)(3), and nothing has changed to alter the propriety of the Court's certification. The Court should now grant final certification of the Settlement Class.

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court grant his Motion for Final Approval of the Settlement and enter Final Judgment in the form submitted herewith.

Dated: February 19, 2025                    Respectfully submitted,

**BURSOR & FISHER, P.A**.

By:    */s/ Philip L. Fraietta*
              Philip L. Fraietta

Philip L. Fraietta
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

Stefan Bogdanovich (*pro hac vice*)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: sbogdanovich@bursor.com

*Class Counsel*